Victoria L. HAMER, Appellant,

v.

**IOWA CIVIL RIGHTS COMMISSION and United Parcel Service, Inc., Appellees.**

**UNITED PARCEL SERVICE, INC., Appellant,**

v.

**IOWA CIVIL RIGHTS COMMISSION, and Victoria L. Hamer, Appellees.**

No. 90–226.

Supreme Court of Iowa.

June 19, 1991.

Albert L. Harvey and Rodney H. Powell of Black, Harvey, Goldman & Powell, P.C., Des Moines, for appellant United Parcel Service, Inc.

H. Edwin Detlie, Ottumwa, for appellant Victoria L. Hamer.

Thomas J. Miller, Atty. Gen., and Rick Autry, Asst. Atty. Gen., for appellee Iowa Civil Rights Com'n.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

Victoria Hamer was fired from her position with United Parcel Service (UPS) at its Ottumwa, Iowa, facility, and she filed a claim for sex discrimination under Iowa Code chapter 601A (1983). The Civil Rights Commission awarded damages, ordered her reinstatement, and assessed attorney fees. UPS petitioned for judicial review, and the district court affirmed the Commission's award except for the award of emotional distress damages, which it reversed. All parties appealed or cross-appealed. We affirm in part, reverse in part, and remand.

Hamer began employment at UPS in 1977. In 1980, she began working as an on-call delivery driver. In March 1984, UPS terminated Hamer for failure to be available for work for three consecutive days, claiming that Hamer violated the "no-call/no-show" provision of UPS's collective bargaining agreement. On Hamer's claim of sex discrimination, the Iowa Civil Rights Commission found UPS's justification for the discharge to be pretextual.

■ Judicial review of Civil Rights Commission actions is governed by the Iowa Administrative Procedure Act, Iowa Code § 17A.19. *See* Iowa Code § 601A.17(1). Under section 17A.19(8)(f), the Commission's factual findings must stand if supported by substantial evidence when the record is viewed as a whole. Substantial evidence is what a reasonable mind would accept as adequate to reach a given conclusion, even if the reviewing court would have drawn a contrary inference from the evidence. *Varied Enters., Inc. v. Sumner*, 353 N.W.2d 407, 409 (Iowa 1984). Our court cannot engage in independent findings of fact unless the facts are established as a matter of law. *Eaves v. Board of Medical Examiners*, 467 N.W.2d 234, 237 (Iowa 1991); *Aluminum Co. of Am. v. Employment Appeal Bd.*, 449 N.W.2d 391, 394 (Iowa 1989); *Armstrong v. State of Iowa Bldgs.*, 382 N.W.2d 161, 165 (Iowa 1986).

I. *Evidence Issues.*

UPS claims that the Commission erred in (a) drawing inferences from UPS's failure to produce documents, (b) relying on prior acts of alleged discrimination, (c) basing credibility determinations on the presence

of certain parties at the hearing, and (d) finding discrimination under the record.

**A.** *Inference from failure to produce evidence.* According to UPS, Hamer was terminated because she was not at her phone for three consecutive days when the company attempted to call her for work. Hamer claimed this alleged justification was pretextual. The administrative law judge determined that the work records of the week in question were relevant and ordered UPS to produce them. UPS did not produce the information, claiming that its policy was to destroy documents after three years, and the work schedule was no longer in existence. This explanation was rejected by the administrative law judge in light of the fact that the work records from the *preceding* six weeks were available and were offered into evidence by UPS.

When relevant evidence is within the control of a party whose interest is affected, a court may infer that the evidence, if not produced, would be unfavorable to that party. *Ritz v. Selma United Methodist Church,* 467 N.W.2d 266, 271 (Iowa 1991); *Crosser v. Iowa Dep't of Pub. Safety,* 240 N.W.2d 682, 685 (Iowa 1976); *Quint–Cities Petroleum Co. v. Maas,* 259 Iowa 122, 127, 143 N.W.2d 345, 348 (1966). The administrative law judge drew that inference here, and we find no error in doing so. The evidence in question had been available to UPS; the evidence was not produced, and the explanation tendered by UPS for failure to produce it was found by the administrative law judge to be insufficient.

**B.** *The credibility issue.* UPS also complains that the agency wrongfully impugned the credibility of UPS employees who testified, for UPS, that the work environment was largely free of sexual harassment. The hearing officer found these employees were "very nervous during the hearing and less than credible witnesses," and noted, as if in explanation, that wives, close friends, and "a girlfriend" of the employees were present at the hearing. UPS complains that the Commission erred in "basing its decision" on the presence of those persons at the hearing.

We do not agree with UPS's premise that the Commission's findings, when viewed as a whole, were "based" on the presence of outsiders at the hearing. Credibility assessments are largely left to the fact finder, and we give deference to those findings. *Peoples Memorial Hosp. v. Iowa Civil Rights Comm'n,* 322 N.W.2d 87, 92 (Iowa 1982). While the administrative law judge did not state that she considered the presence of these people in determining the credibility of the witnesses, we cannot say that this would be improper if she had.

**C.** *Evidence of prior acts.* UPS contends that the Commission erred in considering evidence of earlier acts by UPS personnel. The standard for admissibility in administrative hearings is that the evidence be "the kind of evidence on which reasonably prudent persons are accustomed to rely for the conduct of their serious affairs ... even if it would be inadmissible in a jury trial." Iowa Code § 17A.14(1) (1989). This section conforms with the general rule that administrative agencies are not bound by technical rules of evidence. *McConnell v. Iowa Dep't of Job Serv.,* 327 N.W.2d 234, 237 (Iowa 1982).

Evidence of a discriminatory atmosphere is relevant in considering a discrimination claim, and it "is not rendered irrelevant by its failure to coincide precisely with the particular actors or time frame involved in the specific events that generated a claim of discriminatory treatment." *Conway v. Electrol Switch Corp.,* 825 F.2d 593, 597 (1st Cir.1987). As the court in *Conway* stated:

> While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add "color" to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff....
>
> ....
>
> ... While this court has recognized that "proof of a general atmosphere of discrimination is not the equivalent of proof of discrimination against the individual," it may be one indication that the

reasons given for the employment action at issue were "implicitly influenced" by the fact that the plaintiff was of a given race, age, sex or religion.

*Id.* at 597–98.

In a claim of disparate treatment in employment, proof of the employer's motive is critical. *Hy–Vee Food Stores v. Civil Rights Comm'n,* 453 N.W.2d 512, 516 (Iowa 1990) (citing *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396, 415 n. 15 (1977)).

Of course, a discriminatory motive will rarely be announced or readily apparent. Consequently, evidence concerning the employer's state of mind is relevant in determining what motivated the acts in question. Evidence of prior acts have been allowed in numerous federal cases. *See, e.g., Estes v. Dick Smith Ford,* 856 F.2d 1097, 1104 (8th Cir.1988) (employer's discriminatory treatment of black customers might have some bearing on question of employer's motive in discharging black employee); *Hallquist v. Local 276, Plumbers & Pipefitters Union,* 843 F.2d 18, 23 (1st Cir.1988) (statements derogatory toward women by foreman is relevant to motive for discharge); *Miles v. M.N.C. Corp.,* 750 F.2d 867, 876 (11th Cir.1985) (racial slur by assistant superintendent relevant to motive in failure to recall suit); *Brown v. Parker–Hannifin Corp.,* 746 F.2d 1407, 1412 (10th Cir.1984) (failure to remedy harassment by employees may serve as proof that the employer's proffered nondiscriminatory reason for the discharge was pretextual); *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1236 (D.C.Cir.1984) (the fact supervisor laughed at racist joke could be evidence of discriminatory motive); *Rowe v. Cleveland Pneumatic Co.,* 690 F.2d 88, 97 (6th Cir.1982) (evidence of racial slurs by supervisor relevant to plaintiff's prima facie case and to establish pretext).

UPS's argument that the acts were not within 180 days of Hamer's complaint is irrelevant, even though Iowa Code section 601A.15(12) requires that a complaint be filed within 180 days of alleged discrimination. *See Lynch v. City of Des Moines,* 454 N.W.2d 827, 831 (Iowa 1990). The prior acts are relevant to show the general atmosphere of Hamer's workplace; they need not be actionable in themselves in order to be admissible.

D. *The substantial evidence issue.* UPS does not challenge the sufficiency of the evidence in the record as a whole, but it points to alleged defects in the Commission's analysis of specific items of evidence in the record underlying the Commission's finding that Hamer's discharge was pretextual.

UPS contends, for example, that the Commission's findings on the question of whether UPS had telephoned Hamer on a key date lacked sufficient support in the evidence and were based solely on the speculation of the hearing officer.

Hamer and the Commission counter, first, that the no-call/no-show argument is a red herring; the rule is not aimed at on-call employees at all, but to employees who are scheduled to work but neither show up for work nor call to tell UPS. Second, and more significantly, the key question is not whether substantial evidence supports the officer's findings on specific facts but whether, when the record is viewed as a whole, substantial evidence supports the finding of discrimination. *See* Iowa Code § 17A.19(8)(f). We believe there is substantial evidence to support that finding here.

A party claiming a civil rights violation in hiring practices has the initial burden to prove a prima facie case of discrimination by showing that (1) the employee belongs to a protected group; (2) the employee applied for and was qualified for a job for which the employer was seeking applications; (3) the claimant was rejected; and (4) after the rejection, the position remained open and the employer continued to seek applications. *Hy–Vee,* 453 N.W.2d at 516; *Iowa State Fairgrounds Sec. v. Iowa Civil Rights Comm'n,* 322 N.W.2d 293, 296 (Iowa 1982). These criteria under the Iowa Civil Rights Act are based on the application of the federal act by the Supreme Court in *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973).

The test for a prima facie case as set out in *Hy–Vee* (a promotion case) and *McDonnell Douglas* (a hiring case) obviously does not apply literally to the present case, which is a claimed pretextual firing of an existing employee. The third and fourth elements of the *McDonnell Douglas* test, pertaining to a failure to hire, are obviously inapplicable to an existing employee status. However, as the Supreme Court has characterized, this "test" is merely "an appropriate model for a prima facie case" of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207, 215 n. 6 (1981). And, as *McDonnell Douglas* itself stated, "[t]he facts necessarily will vary ... and the specification above of the prima facie proof required from [the claimant] is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13, 36 L.Ed.2d at 677–78 n. 13. *See also Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 967 (1978) ("The method suggested in *McDonnell Douglas* for pursuing this inquiry ... was never intended to be rigid, mechanized, or ritualistic.").

The Court said, in *Furnco,* that the test

is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume

acts only with *some* reason, based his decision on an impermissible consideration such as race.

*Id.* (citations omitted).

Modifying somewhat the *McDonnell Douglas* test to fit an existing employer/employee relationship, we believe that a prima facie case of discrimination may be shown by establishing (1) that the employee belongs to a protected group; (2) that the employee was qualified to retain the job; (3) the claimant was terminated; and (4) it is more likely than not that the termination was based on an impermissible consideration, in this case sex. *See Reeb v. Marshall,* 626 F.2d 43, 45 (8th Cir.1980), which stated that the prima facie case is established if the claimant shows that it is more likely than not that the employer's action was based on a discriminatory criteria illegal under the Civil Rights Act.

We believe that there is substantial evidence in the record to support all of these findings. In fact, UPS does not seriously challenge Hamer's establishment of a prima facie case. Rather, it attempts to explain and justify her termination by the application of its "no-call/no-show" rule.

Once a prima facie case has been established, a presumption of discrimination arises. While the ultimate burden of persuasion never shifts from the complainant, the employer must meet the presumption by going forward with evidence to dispel the presumption by articulating a legitimate, nondiscriminatory reason for the employment action. *Hamilton v. First Baptist Elderly Hous. Found.,* 436 N.W.2d 336, 338–39 (Iowa 1989); *Iowa State Fairgrounds Sec.,* 322 N.W.2d at 296. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678.

If the employer shows a nondiscriminatory reason for the discharge, the claimant may present evidence to persuade the fact finder that the articulated grounds for the reason is pretextual. *Id.* at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 679.

We agree with the Commission that a "no-call/no-show" provision in a contract refers to the case in which an employee neither shows up for work nor calls to

inform the employer. It does not apply to the "on-call" employee such as Hamer. She was not scheduled to work on the days in question, she was in the process of moving at the time, and it was difficult to reach her by telephone. No company rule required on-call employees to be accessible by telephone, yet when the employer was unable to reach her during the time she was moving, it simply fired her.

We believe that the evidence, when considered as a whole, sufficiently established that the explanation offered by UPS for its termination of Hamer was pretextual.

## II. *Damages.*

■ A. *The measure of damages.* Hamer's recovery for lost wages was based by the Commission on what *she* would have earned, but Hamer argues that she should receive what a *male* employee would have made. Hamer cites *Hy–Vee,* 453 N.W.2d at 531, to support this argument. *Hy–Vee,* however, does not stand for the proposition that this is an inflexible measure of recovery, only that the Commission in that case had acted within its discretion in fashioning a remedy based upon the earnings of a male employee. *Id.*

Iowa Code section 601A.15(8) gives authority to the Commission to "take the necessary remedial action as in the judgment of the Commission will carry out the purposes of this chapter," and we give considerable deference to the Commission's fashioning of a remedy. *Id.* Implicit in this section is the discretion to fit a remedy to the specific case, and we believe the Commission's award based on Hamer's actual pay, rather than that of a theoretical employee, was within that discretion.

In a related claim, Hamer asserts that it was error for the Commission to fail to reduce the projected mileage allowance received by Hamer of $.25 per mile by her operating expenses of $.21 per mile. However, as Hamer concedes, our cases do not require "unrealistic exactitude" in computing awards in discrimination cases. *Hy–Vee,* 453 N.W.2d at 530–31 (quoting *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 260–61 (5th Cir.1974)).

We do not believe that the Commission's failure to specifically discuss the impact of Hamer's automobile expense renders the Commission's award invalid.

■ B. *Mitigation of damages.* The administrative law judge, in determining the back pay award, stated that:

The law is clear that [UPS] has the burden of proving failure to mitigate damages. It did not do so. However, it is difficult to believe that Hamer could not have found at least minimum wage work, therefore, it will be assumed she could have done so and that amount should be deducted [from the back pay award].

Hamer says that this was error; UPS was required to raise the issue of mitigation, and it failed to do so. She contends that, if she had known that mitigation was to be involved, she would have introduced evidence of the "considerable difficulty she experienced in applying for work for near minimum wage, when she had been fired from a job for over $15.00 per hour."

We hold it was error for the Commission to reduce Hamer's recovery on the basis that she had failed to mitigate damages in view of the fact that UPS did not raise or introduce evidence on the issue of mitigation. We therefore remand to the Commission for recomputation of Hamer's lost wages.

## III. *The Emotional Distress Issue.*

■ Emotional distress is a proper element of damage in a wrongful discharge case, *Hy–Vee,* 453 N.W.2d at 525; *Chauffeurs, Teamsters & Helpers v. Iowa Civil Rights Comm'n,* 394 N.W.2d 375, 383 (Iowa 1986), and the Commission awarded such damages here. The district court concluded the award lacked substantial evidence in the record and reversed, noting that Hamer's distress was short-lived, that she had received unemployment benefits during the time of her unemployment, and that no medical evidence was introduced to show treatment for emotional distress.

The court contrasted the facts of this case to those in *Chauffeurs* and concluded that the conduct of the employer in *Chauf-*

*feurs* and the impact of the wrongful discharge in that case were more egregious. As we said in *Hy–Vee* (which was filed after the district court's ruling in this case), however, a civil rights complainant may recover compensable damages for emotional distress without a showing of physical injury, severe distress, or outrageous conduct. *Hy–Vee*, 453 N.W.2d at 526. It is true that the impact on Hamer was concededly less severe than in *Chauffeurs* and in *Hy–Vee*, but the amount of the award, $5000, was correspondingly reduced. We conclude that the record amply supports the award of emotional distress damages and that it was error for the district court to reject it. We therefore reverse the district court and order the reinstatement of the Commission's award for emotional distress.

### IV. *Attorney Fees.*

Hamer argues that the Commission's award of attorney fees was too low because it did not compensate for prenotice services by the attorney. UPS argues the award was too high because it included fees for Hamer's attorney in representing the interest of the Commission in the judicial review proceeding.

■ A. *Prenotice fees.* The Commission refused to allow attorney fees for services rendered by Hamer's attorney before service of the notice of the Commission hearing. The Commission's order stated that, under a prior Commission ruling, only services rendered after notice of hearing would be allowed. Hamer, however, points to later rulings by the Commission which have expressly allowed such fees. Despite the later rulings, however, prenotice fees are not required to be reimbursed; it is still an area for Commission discretion, and we find no abuse of that discretion here.

■ B. *Fees for Commission's attorney.* The Commission requested by letter that Hamer's attorney represent the Commission in the presentation of Hamer's claim. *See* Iowa Code § 601A.15(6) ("The case in support of such complaint shall be presented at the hearing by one of the commission's attorneys or agents."). UPS contends that the representation of Hamer

before the Commission and on judicial review should have been provided by the Commission's own attorneys and that UPS should not be required to pay for those services.

Iowa Code section 601A.15(8)(a)(8), however, provides for recovery by a successful claimant of "actual damages, court costs and reasonable attorney fees." This section, we believe, clearly anticipates that when a claimant prevails the attorney fees will be paid by the losing party, not by the claimant or the Commission.

We affirm the district court except for its award of damages. We reverse the damage award and remand to the Civil Rights Commission for recomputation of lost wages without reduction for mitigation and for reinstatement of its award for emotional distress. Costs are taxed to UPS.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.