**IN THE COURT OF APPEALS OF IOWA**

No. 17-0222
Filed August 2, 2017

**JUANETTE PLATO,**
     Plaintiff-Appellant,

**vs.**

**ANDERSON ERICKSON DAIRY COMPANY,**
     Defendant-Appellee.
_____

     Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.

     Juanette Plato appeals the district court order granting summary judgment

on her employment-discrimination claims. **REVERSED AND REMANDED.**

     Jill M. Zwagerman and Thomas J. Bullock of Newkirk Zwagerman, P.L.C.,

Des Moines, for appellant.

     Kerrie M. Murphy and Julie T. Bittner of MWH Law Group L.L.P., West

Des Moines, for appellee.

     Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Juanette Plato appeals the district court order granting summary judgment on her employment-discrimination claims in favor of Anderson Erickson Dairy Company (AE). She contends the district court erred in determining she failed to show a genuine issue of material fact in dispute on the question of whether AE discriminated against her based on her sex when it failed to hire her as human resources representative and in terminating her employment. Because the record, when viewed in the light most favorable to Plato, shows a dispute concerning material issues of fact, we reverse the summary-judgment order and remand the case for further proceedings.

### I. Background Facts and Proceedings.

Plato began working at AE as a human resources administrative assistant in October 2013.[1] Stacy Henson, AE's human resources manager and Plato's direct supervisor, thought Plato performed impressively in the position. When AE created a new position for a human resources representative that December, Henson encouraged Plato to apply. Plato provided her resume to Henson.

In January 2014, Joel Abbott, AE's human resources director, and Henson interviewed five candidates for the human resources representative: Plato, another woman, and three men. During her interview, Plato asked Abbott if, at that time, he could think of any reason that would indicate she was not capable of doing the job human resources representative; Abbott replied, "No."

---

[1] Although a staffing agency assigned Plato to work at AE, the district court noted it "heard no legal argument from either party and found no outside precedent that this distinction is determinative of any of the remaining legal issues in the case."

After interviewing all the candidates, Plato remained Henson's first choice to fill the position. Abbott's first choice was Chad Van Hauen. His second choice was another male candidate. While discussing the candidates, Abbott told Henson "he didn't think that the plant environment would be a good environment for a female to work in" because it was "pretty rough" and "it would take someone stronger" to work "on the plant side." Abbott told Henson he did not think women were strong enough to handle that environment.

Abbott offered Van Hauen the position of human resources representative. Abbott told Plato that he did not select her for the position because she did not have enough labor-relations experience. Van Hauen also lacked labor-relations experience.

When Plato asked Abbott about another permanent position available at AE, he told her they were hiring for a position in the customer service department. Plato believed Abbott suggested that position because customer service was where the majority of the women at AE worked. Abbott also told Henson he thought Plato would "probably have a better fit with the customer service ladies."

Plato continued to work as a human resources administrative assistant with Henson as her supervisor. Her first priority was to call employees for overtime. She was also responsible for keeping track of attendance at the plant, which was her second priority. If she completed these tasks, she was to do any additional work provided her. However, Plato was scheduled to work six-and-one-half-hours per day, and the duties of calling overtime and keeping track of

attendance were often enough to keep a full-time employee busy. As a result, Henson asked Plato to work extra hours on occasion.

Although Plato did not report to Van Hauen, he asked her to complete an assignment for him in July 2014. Van Hauen was frustrated when Plato was unable to do so. Although Plato was busy with her priority duties, Van Hauen thought she was giving him "excuses" as to why she could not complete the assignment. He was upset that he had to stay late to complete the work himself.

Henson left her employment with AE in August 2014.[2] Shortly thereafter, Abbott named Van Hauen interim human resources manager. Around that time, the human resources representative position was converted to a safety position. No one ever informed Plato that Van Hauen would be supervising her; she believed she reported to Abbott.

Van Hauen was concerned about Plato's ability to perform her job and reported his concerns to Abbott. Specifically, he took issue with Plato not performing tasks he assigned. He also disliked Plato's "attitude," telling Abbott that she rolled her eyes and sighed. He cited an incident that occurred in July 2014, in which he introduced Plato as a "receptionist" to a new hire, and Plato corrected him. Van Hauen told Abbott he wanted to look for someone to replace her, and Abbott gave Van Hauen permission to do so.

In September 2014, Van Hauen decided to terminate Plato. He began doing interviews for her position in October. Plato filed a complaint with the Iowa Civil Rights Commission on October 23, 2014, alleging AE engaged in race and

_____

[2] Henson was terminated, reportedly due to a breakdown in her relationship with Abbott. Henson filed a discrimination claim against AE, alleging gender discrimination among other claims. That claim has been settled.

gender discrimination by not hiring her for the human resources representative position. AE terminated her employment on October 24, 2014.

In September 2015, Plato filed a petition alleging AE discriminated against her based on her sex.[3] In November 2016, AE moved for summary judgment on her claim. After a hearing, the district court entered an order granting AE's motion. Plato appeals.

## II. Scope and Standard of Review.

We review the district court's summary-judgment ruling for correction of errors at law. *See Homan v. Brandstad*, 887 N.W.2d 153, 163 (Iowa 2016). Summary judgment is appropriate only when the moving party has shown there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See id.* In reviewing the district court's ruling, we examine only two questions: (1) whether there is a genuine dispute regarding the existence of a material fact and (2) whether the district court correctly applied the law to the undisputed facts. *See id.* at 164.

A material fact is one that may affect the outcome of the action. *See id.* If reasonable minds can differ as to whether a material fact exists, there is a genuine issue of material fact in dispute. *See id.* "Even if facts are undisputed, summary judgment is not proper if reasonable minds could draw from them different inferences and reach different conclusions." *Walker Shoe Store v. Howard's Hobby Shop*, 327 N.W.2d 725, 728 (Iowa 1982).

---

[3] She also alleged AE engaged in discrimination based on her race and retaliated against her, but these claims were later dismissed.

In reviewing the district court's ruling, we view the record in the light most favorable to Plato and draw all legitimate inferences the record supports in her favor. *See Homan*, 887 N.W.2d at 163-64. We also give her the benefit of any doubt in determining whether granting summary judgment is appropriate. *See Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 88 (Iowa Ct. App. 1994).

**III. Analysis.**

The Iowa Civil Rights Act prohibits discrimination in employment based on an applicant or employee's sex. *See* Iowa Code § 216.6 (2014). Plato alleges a disparate treatment theory of discrimination, claiming AE treated her less favorably than others because of her sex. *See Pecenka v. Fareway Stores, Inc.*, 672 N.W.2d 800, 803 (Iowa 2003). Because the discriminatory motive for the adverse employment decision "will rarely be announced or readily apparent," an employee alleging disparate treatment discrimination must generally establish a prima facie case of disparate treatment discrimination by showing (1) the employee is a member of a protected class, (2) the employee was qualified for the job, (3) the employee suffered an adverse employment action, and (4) it is more likely than not that the adverse action was based on an impermissible consideration. *See Hamer v. Iowa Civil Rights Comm'n*, 472 N.W.2d 259, 263-64 (Iowa 1991). The burden then shifts to the employer to provide a legitimate nondiscriminatory reason for the adverse action. *See id.* at 264. If the employer does so, the burden shifts back to the employee to show the employer's purported reason for the adverse action is pretext and a discriminatory motive played a substantial part in the adverse action. *See id.*

In a small number of cases, there is direct evidence that the employer based its adverse employment decision on a prohibited discriminatory reason. *See Vaughan v. Must, Inc.*, 542 N.W.2d 533, 538 (Iowa 1996) (citing the test articulated in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)). If an employee presents credible evidence of a supervisor's conduct or statements that may be seen as sufficient to support an inference that the discriminatory attitude was a motivating factor, it is not enough for the employer to articulate a nondiscriminatory reason for the decision. *See id.* at 538-39. Rather, the burden shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in absence of improper motive. *See id.*

Plato alleges two adverse employment actions: (1) AE's failure to hire her as human resources representative and (2) its decision to terminate her employment. The district court determined Plato failed to establish a prima facie case of discrimination in either instance. We consider these claims in turn.

**A. Failure to Hire.**

The district court determined Plato failed to prove a prima facie case of sex discrimination on her failure to hire claim. AE admitted that Plato is a woman and that it hired a man for the human resources representative position. The district court concluded that there was no fact dispute as to whether Plato was qualified for the position, finding:

> Plato's resume clearly shows she does not have the length of experience preferred for the HR representative position. She also fails to have the experience in the other listed responsibilities such as "HR consulting/advocacy, employee relations, recruiting & placement, personnel practices, compensation & benefits, training & development, communications, etc." "A BA/BS degree with 3

years of HR experience" is an objective factor that Plato failed to meet.

The only objective criteria set forth in the job posting for the human resources representative position states: "A BA/BS degree with 3 years of HR experience in a manufacturing environment is preferred." This statement is a preference rather than a requirement for employment. After she provided a resume listing her experience and qualifications, AE, knowing the amount of human resources experience she had, opted to interview Plato as one of only five candidates it interviewed for the position. During that interview, Plato asked Abbott if he knew of anything that would indicate she was not qualified for the position, and he answered "no." Furthermore, there is evidence to support a finding that Plato, as a human resources administrative assistant, was already performing a number of the duties listed in the human resources representative job listing. Henson stated that Plato was "essentially half trained" to be human resources representative by the time they hired for the position. It was precisely for this reason that Henson encouraged Plato to apply for the position and ranked Plato as her first choice to hire. Viewing the evidence in the light most favorable to Plato, there is a genuine fact dispute as to whether she was qualified for the human resources representative position.

The district court also determined that Plato's claim failed because Plato could not prove AE's true reason for failing to hire her was discriminatory:

> The record fails to provide any factual basis to establish [AE]'s stated reason for failing to hire [Plato] was pretextual. The pretext argument essentially boils down to: 1) Henson, her former supervisor, was treated poorly before she was terminated and settled her own discrimination lawsuit; 2) Abbott claimed that the plant, where Plato would have worked as HR Representative, was

not a good place for women to work; and 3) that her few months in her position as HR Assistant made her more qualified than Van Hauen, especially in the realm of union relations. This Court finds none of these points persuasive. Just as [AE] cannot rely upon the fact that [it] has a female CEO and has been a good member of the Des Moines community to somehow prove it is incapable of discriminating on the basis of sex, Plato cannot rely upon the alleged negative experiences of other individuals to prove her own case.

The court characterized Abbott's statement that the plant is not a good place for women to work as a "stray remark" that is insufficient to establish pretext or discriminatory motive. We disagree. Henson stated in her deposition that Abbott made his statement during their discussion of the candidates for human resources representative. The evidence also shows that although Henson was involved in the hiring process, the hiring decision was ultimately Abbott's. His statement that women are not suited to work in the plant, made during a discussion about hiring for the human resources representative position, is direct evidence of a discriminatory motive by the decisionmaker. On this record, summary judgment is not warranted.

## B. Termination.

The district court also determined Plato failed to prove a prima facie case of sex discrimination on her claim she was unlawfully terminated based on her sex. The court acknowledged that AE conceded Plato's membership in a protected class and the fact that it terminated her, and made no argument that Plato lacked the qualifications to retain her job. However, the court determined that Plato failed "to produce any evidence leading a reasonable factfinder to infer discriminatory motive":

A fair reading of the record leads this court to conclude that a reasonable factfinder would not come away with an inference of discriminatory intent, but rather the understanding that Van Hauen (and Abbott) decided to terminate Plato because she was not living up to the expectations they had for the person filling her position. It is not the role of this court to determine whether those expectations were fair or even attainable (by Plato or any other person), so long as the expectations were not based on gender stereotypes, and as long as their decision to seek someone who might better meet them was not motivated by Plato's gender. The purpose of the IRCA is not to allow courts to retroactively correct for bad business decisions; it is to allow courts to correct for discriminatory decisions.

The evidence supports the inference that Plato's sex played a part in her termination. The record shows that Abbott made the ultimate decision to terminate Plato's employment. There is evidence showing Abbott believed women were not suited to work in the plant because they were not strong enough. This is sufficient to establish a prima facie case of sex discrimination.

The district court further found that even if Plato had established a prima facie case of discrimination, she could not show AE's reason for her termination was pretextual:

> [T]he record as a whole shows that Plato's direct supervisor at the time of her termination was unhappy with her work and work style, and had been for some time. They had a poor working relationship, starting as early as July 2014, which continued throughout the time Plato reported to Van Hauen. Van Hauen explained in his deposition that the issues that led to her termination were "unprofessional[ism], trustworthiness, and poor attitude," as well as a number of union grievances filed against Plato. Plato herself explained their dysfunctional working relationship . . . . [Plato] has provided no evidence showing Van Hauen's stated reasons are a cover for discriminatory motive on the basis of Plato's gender (other than an unpersuasive argument that Van Hauen's stated reasons had changed based on a few "gotcha" deposition questions about whether grievances did or did not play a role in the decision to terminate). After all, at this stage, Plato must both prove that Abbott/Van Hauen's given reasons are false, and that the actual motive was discriminatory. Rather, the record shows that while Henson was always happy with Plato's work, Van Hauen was, for

the most part, not. And when he unsuccessfully tried correcting Plato's work issues, he asked Abbott if they could replace her.

The record establishes a factual dispute concerning Plato's job performance. There were two diametrically opposed viewpoints concerning Plato's job performance: the viewpoint of Henson, who supervised Plato for the bulk of Plato's employment at AE, and that of Van Hauen, who supervised Plato during her last two months at AE. In Henson's view, Plato "caught on to it very quickly," "was very, very, very good at her job," and did a "phenomenal" job calling for overtime—her main job duty—which resulted in a drastic decrease in the number of grievances filed. Henson had done the overtime calling prior to Plato's hiring, and when asked how she performed at the task, Henson replied she was "[n]ot as proficient as [Plato]."

In contrast, Van Hauen complained about what he perceived to be Plato's "attitude." He told Henson that he thought Plato "kind of had an attitude sometimes" because she came off as "outspoken" and "pushy." Van Hauen complained to Abbott "about [Plato's] rolling eyes and sighing." In his deposition, Van Hauen described Plato's attitude as "that type of short, eye roll-type attitude." Van Hauen was particularly offended when Plato corrected him in front of a new employee when Van Hauen introduced her as a receptionist, claiming Plato "raise[d] her voice," "scolded him," "basically snipped at" him, and made a "scene" by saying, "That's not my job." Van Hauen stated that Plato's response when he apologized to her the next day was "again, attitude, eye roll." Van Hauen and Abbott both though it was "kind of odd" and "unprofessional" for Plato to correct him in front of someone.

Van Hauen also complained that Plato was not doing the work he assigned her. However, the record could support a finding that Van Hauen had a poor understanding of Plato's job duties and how much of her time they entailed. Plato reported to Henson until August 2014, not Van Hauen. Although Van Hauen believed Plato should have performed the work he requested her to do, Henson believed Van Hauen had a poor understanding of the chain of command. After Henson left AE, Plato believed that Abbott was her direct supervisor. No one informed Plato she was to report to Van Hauen—not even Van Hauen, who assumed that someone else would have told Plato he was her supervisor.

The record is rife with discrepancies as to why AE terminated Plato and whether it terminated her based on her sex. Resolving these discrepancies will require credibility determinations, which are solely the province of a factfinder. Additionally, a factfinder could draw different inferences from the facts in the record. As such, summary judgment is not appropriate on the question of whether Plato was terminated based on her sex.

### C. Conclusion.

We reverse the district court's order granting summary judgment in favor of AE on both of Plato's sex-discrimination claims. We remand to the district court for further proceedings.

**REVERSED AND REMANDED.**