Tina J. DAVIS, Administrator of the
Estate of Allan Ray Davis,
Deceased, Appellant,

v.

STATE of Iowa and Department of
Natural Resources, Appellees.

No. 03–0366.

Supreme Court of Iowa.

June 16, 2004.

Gregory T. Racette and Apryl M. De-Lange of Hopkins & Huebner, Des Moines, and James W. McGrath of McGrath & McGrath, P.C., Keosauqua, for appellant.

Thomas J. Miller, Attorney General, and Joanne Moeller, Assistant Attorney General, for appellees.

CARTER, Justice.

Tina J. Davis, the personal representative of Allan Ray Davis, deceased, who was killed while snowmobiling on public lands, appeals from an adverse summary judgment in her wrongful-death action against the State of Iowa and the Iowa Department of Natural Resources (DNR). The district court, in granting summary judgment, determined Iowa Code section 321G.22 (1997) absolved the State and its agencies from any duty to snowmobilers on public lands and affirmatively immunized the State and its agencies from liability for injuries or death suffered from that activity.

· The personal representative asserts on appeal that the limitation of liability provided by section 321G.22 only extends to events occurring· on land contiguous to a highway or roadway under the control of the State. She contends the location where her decedent's death occurred was not contiguous to a highway or roadway and therefore the district court erred in granting summary judgment. After reviewing the record and considering the arguments presented, we agree with the district court that section 321G.22 relieves the State from liability for injuries arising from snowmobile activities on public lands without regard to their proximity to a highway or roadway. We affirm the judgment of the district court.

In the early evening of December 30, 1998, Allan Ray Davis and several friends were snowmobiling on trails in and around Lacey–Keosauqua State Park and Shimek Forest, near Keosauqua. Lacey–Keosauqua is a 1600–acre public park owned by the State and operated by the DNR. The adjoining 1000–acre portion of Shimek Forest is also owned by the State for public use and operated by the DNR.

Shortly after 8 p.m., Davis and his friends snowmobiled down the park road and entered a trail on the south side of the park. There was a chain barrier obstructing access to the trail, but they entered through a small opening between the chain post and a large tree. At about 9 p.m., the group returned to the same trailhead from the opposite direction. The trail curved slightly near the entrance. Three snowmobilers ahead of Davis were able to successfully negotiate through the same opening beside the chain post through which they had ·entered the trail. Apparently, Davis did not see the chain as he approached it. He sustained fatal injuries when it struck his head and neck.

The DNR maintained this trail for many years prior to the winter of 1997–98. The chain had been placed across the trailhead sometime before 1972 to prohibit motor vehicle access. For some time thereafter, the chain barrier was taken down in early winter and replaced with a snowmobile gate, which allowed snowmobiles, but not larger vehicles, to gain access to the trail.

Sometime before the winter of 1997–98, the DNR discontinued maintaining the trail. This resulted in the elimination of

its wintertime practice of taking down the chains, clearing debris, and putting up the snowmobile gate. The chain was left in place year round. According to the DNR, the reason for discontinuing maintenance of the trails was a sharp reduction in snowmobile traffic as a result of mild winters. However, even though the DNR stopped maintaining the trails, the rangers testified by affidavit and deposition that the trails continued to be open to snowmobilers and that this activity was invited in the park literature and maps.

The petition of the personal representative alleged that the death of her decedent was occasioned by the negligence of the State and DNR. The manner in which the defendants are alleged to have been negligent is not described in the petition. That lack of specificity, however, had no bearing on the district court's ruling, which was based on the court's conclusion that section 321G.22 absolved the defendants of any liability for injury or death arising out of snowmobile activities on public lands.

## I. *Scope of Review.*

■ Rulings on motions granting summary judgment are reviewed to determine errors at law. *In re Estate of Fordonski,* 678 N.W.2d 413, 414 (Iowa 2004); *Knudson v. City of Decorah,* 622 N.W.2d 42, 48 (Iowa 2000). When a grant of summary judgment is based on immunity or a statute of limitations, the issue is whether the applicable statutes were properly applied. *In re Estate of Thies,* 463 N.W.2d 40, 42 (Iowa 1990).

## II. *The Statutory Limitation of Liability.*

■ In considering the issues presented, we are concerned not only with the language of the statute as it existed at the time of the death of plaintiff's decedent, but also with how the statute read prior to the enactment of a 1989 amendment thereto. In order to show the statutory language both before and after the 1989 amendment, we set forth the amendment as contained in the session laws. Words added by the 1989 amendment are underlined, and words deleted are indicated by strikeover.

Sec. 34. Section 321G.22, Code 1989, is amended to read as follows:

321G.22 LIMITATION OF LIABILITY BY PUBLIC BODIES AND ADJOINING OWNERS.

The state, its political subdivisions, and the owners or tenants of property adjoining public lands or the right of way of a public highway and their agents and employees owe no duty of care to keep the public lands, ditches, or land contiguous to a highway or roadway under the control of the state or a political subdivision safe for entry or use by persons operating a an all-terrain vehicle or snowmobile, or to give any warning of a dangerous condition, use, structure, or activity on such the premises to persons entering for such purposes, except in the case of willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. The state, its political subdivisions, and the owners or tenants of property adjoining public lands or the right of ways of a public highway, and their agents and employees are not liable for actions taken to allow or facilitate the use of public lands, ditches, or land contiguous to a highway or roadway except in the case of a willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. This section does not create a duty of care or ground of liability on behalf of the state, its political subdivisions, or the owners or tenants of property adjoining public lands or the right of way of a

public highway and their agents and employees for injury to persons or property in the operation of all-terrain vehicles or snowmobiles in a ditch or on land contiguous to a highway or roadway under the control of the state or a political subdivision. The state, its political subdivisions, and the owners or tenants of property adjoining public lands or the right of way of a public highway and their agents and employees are not liable for the operation of a an all-terrain vehicle or snowmobile in violation of this chapter.

1989 Iowa Acts ch. 244, § 34.

The first sentence of the amended act serves to negate any duty of the State to keep certain lands safe for entry or use by persons operating a snowmobile. The second sentence of the act serves to negate any legal liability of the State for action to allow or facilitate use of certain lands. The issue in the present dispute requires us to determine on what lands this negation of duty and negation of legal liability was intended to exist. The personal representative contends that the words "contiguous to a highway or roadway" modify all of the preceding words in the series, i.e., "public lands, ditches, or land."

Much of the argument of the parties involves a grammatical interpretation of the disputed language. The State urges that, because the words "contiguous to a highway or roadway" are separated from the preceding series of words by a comma and the word "or," and is not followed by a comma, the modifying language only refers to the last preceding antecedent. That rule of statutory interpretation was applied in *Iowa Comprehensive Petroleum Underground Storage Tank Fund Board v. Shell Oil Co.*, 606 N.W.2d 376, 380 (Iowa 2000).

 In resolving the present dispute, we need not rely on a literal or grammatical interpretation of the statute in order to discover the legislature's intent in enacting the 1989 amendment. In interpreting a statute, we may consider the previous state of the law, circumstances surrounding the statute's enactment, and the text both before and after the amendment. *City of Waukee v. City Dev. Bd.*, 514 N.W.2d 83, 87 (Iowa 1994); *City of Des Moines v. PERB*, 275 N.W.2d 753, 760 (Iowa 1979). We examine amendments "with an eye toward determining the legislative design which motivated the change." *Jenney v. Iowa Dist. Ct.*, 456 N.W.2d 921, 923 (Iowa 1990).

Our reading of the statute as it existed prior to the 1989 amendment leads to the conclusion that the words "land contiguous to a highway or roadway" in both the first and second sentences included both private and public lands. Consequently, the State enjoyed a negation of duty and negation of legal liability for snowmobile activities on public lands contiguous to a highway or roadway under the law as it previously existed.

 In interpreting statutes, we strive to give meaning to statutory changes the legislature has enacted. *State v. Spoonemore*, 598 N.W.2d 311, 312 (Iowa 1999). When an amendment to a statute adds or deletes words, a change in the law will be presumed unless the remaining language amounts to the same thing. *Id.*; *State v. Phelps*, 417 N.W.2d 460, 462 (Iowa 1988). When interpreting amendments, we will assume that the amendment sought to accomplish some purpose and was not a futile exercise. *Hanover Ins. Co. v. Alamo Motel*, 264 N.W.2d 774, 778 (Iowa 1978); *State v. One Certain Conveyance*, 211 N.W.2d 297, 299 (Iowa 1973).

If we were to adopt the interpretation proposed by the personal representative, the 1989 amendment adding the words

"public lands" would have served no purpose. We are convinced that this was not the intention of the legislature. We are instead convinced that it was the intention of the legislature in adding the words "public lands" to the first and second sentences of the statute in the 1989 amendment that the negation of duty and the negation of legal liability that is extended apply to all public lands wherever situated.

### III. Location of the Statute Granting Immunity.

Finally, we consider the personal representative's argument that, if the legislature had intended to grant immunity to the State with respect to the activities causing her decedent's death, it would have inserted the grant of immunity in Iowa Code section 669.14, the location where other immunities of the state are contained. We must reject that contention. As we recognized in *Waterloo Community School District v. PERB*, 650 N.W.2d 627 (Iowa 2002), "[i]f [the statutes] mean what the district court found that they mean it matters not where they are located in the Code or that they express the intended result in words differing from those used elsewhere to describe the same subject matter." *Waterloo Cmty. Sch. Dist.*, 650 N.W.2d at 632.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**