# IN THE SUPREME COURT OF IOWA

No. 15–2099

Filed November 10, 2016

Amended January 25, 2017

**DANNY HOMAN, RICH TAYLOR, JERRY KEARNS, MARK SMITH, THOMAS COURTNEY, JANET PETERSEN, BRUCE HUNTER, CURT HANSON, TONY BISIGNANO, HERMAN QUIRMBACH, DICK DEARDEN, ART STAED, AKO ABDUL-SAMAD, JO OLDSON, RUTH ANN GAINES, SHARON STECKMAN, TODD TAYLOR, MARY GASKILL, KIRSTEN RUNNING-MARQUARDT, TIMI BROWN-POWERS, DAVE JACOBY, PAM JOCHUM, MATT MCCOY, MICHAEL GRONSTAL,** and **BRUCE BEARINGER,**

Appellants,

vs.

**TERRY E. BRANSTAD,** Governor, State of Iowa,

Appellee.

---

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

The plaintiffs contend the Governor's item veto of appropriations for the mental health institutes in Mount Pleasant and Clarinda, Iowa, exceeded the scope of his constitutional authority. **AFFIRMED.**

Mark T. Hedberg, Nathaniel R. Boulton, and Sarah M. Wolfe of Hedberg & Boulton, P.C., Des Moines, for appellants.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, and Meghan L. Gavin, Assistant Attorney General, for appellee.

**WIGGINS, Justice.**

The president of a public employee union and members of the general assembly filed a petition for injunctive relief and writ of mandamus challenging the Governor's item veto of appropriations for the mental health institutes in Mount Pleasant and Clarinda. The parties both filed motions for summary judgment. The district court granted the defendant's motion for summary judgment and dismissed the petition. The plaintiffs appealed.

We find the appeal was timely and the issue of the Governor's veto was not moot. On the merits, we find the Governor's item veto of appropriations for the mental health institutes in Mount Pleasant and Clarinda did not exceed the scope of his constitutional authority. Accordingly, we affirm the judgment of the district court dismissing the petition.

## I. Background Facts and Proceedings.

During its 2015 session, the general assembly passed two bills intended to appropriate money from the state general fund for the operation of two mental health institutes operated by the state. House File 666 appropriated $1,810,000 to fund "the acute inpatient psychiatric mental health program and the geropsychiatric program" at the Clarinda Mental Health Institute for the period of July 1, 2015, through December 15, 2015. 2015 Iowa Acts ch. 142, § 12. Senate File 505 appropriated $6,424,880 and $3,212,440 to fund the operation of the Mount Pleasant Mental Health Institute and its continued provision of "adult psychiatric services including inpatient acute care, inpatient substance abuse treatment, and inpatient dual diagnosis substance use disorder and mental illness treatment" for the periods of July 1, 2015,

through June 30, 2016, and July 1, 2016, through June 30, 2017, respectively. *Id.* ch. 137, §§ 23, 143.

The Mount Pleasant and Clarinda Mental Health Institutes were closed on June 30, 2015, resulting in the layoffs of numerous state employees represented by the Iowa branch of the American Federation of State, County, and Municipal Employees (AFSCME). Two days later on July 2, the Governor signed House File 666 and Senate File 505 but vetoed the appropriations intended to fund the Mount Pleasant and Clarinda Mental Health Institutes. In his veto message, the Governor set forth a brief written explanation for his veto of the appropriations provisions in Senate File 505, noting he believed it was not in the best interests of patients, taxpayers, or the mental health system to continue operating the Mount Pleasant Mental Health Institute. *See id.* ch. 137, veto statement. In a separate statement, the Governor addressed his veto of the appropriations provisions in House File 666, concluding the appropriation of funds to operate the Clarinda Mental Health Institute was "unnecessary" because he had already signed Senate File 505, which he described as closing the Clarinda Mental Health Institute on December 15. *See id.* ch. 142, veto statement.

On July 9, the AFSCME Iowa Council 61 president and twenty state legislators brought this suit against the Governor and the director of human services. The plaintiffs alleged actions taken by the Governor and the director associated with the closings of the Mount Pleasant and Clarinda Mental Health Institutes exceeded the scope of their state constitutional and statutory authority. As the basis for their claims, the plaintiffs asserted the Iowa Code mandates the existence of the Mount Pleasant and Clarinda Mental Health Institutes and their continued operation under the authority and control of the director of human

services. *See* Iowa Code ch. 218 (2015)[1]; *id.* § 226.1. They sought (1) a temporary or permanent injunction barring the Governor from closing the Mount Pleasant and Clarinda Mental Health Institutes or taking any actions in furtherance thereof including the misappropriation or impounding of funds apportioned thereto, (2) a writ of mandamus commanding the Governor and the director to keep the institutions open or commanding the Governor to convene an extraordinary session of the general assembly to appropriate funds for their operation, and (3) all other or further relief the district court deemed appropriate.

The Governor filed a motion requesting the district court to dismiss the petition, asserting the political-question doctrine barred the action, the plaintiffs lacked standing, and the petition failed to state a claim upon which the court may grant relief. Alternatively, the Governor requested the district court order the plaintiffs to recast their petition.

The district court denied the motion in part, concluding the political-question doctrine did not bar the action, the plaintiffs had standing, and the petition stated a cognizable challenge to the Governor's exercise of his constitutional item veto authority for which the court could grant relief. However, the court granted the motion to dismiss as to the director of human services. The plaintiffs did not appeal that dismissal. The court also determined the basis for and nature of the claim asserted by the plaintiffs was clear, and it concluded there was no need to order the plaintiffs to recast their petition.

Immediately thereafter, the parties filed cross-motions for summary judgment and a joint statement of undisputed facts. On November 3, the district court granted summary judgment to the

---

[1]All references to the Iowa Code are to the 2015 Code unless otherwise noted.

Governor and dismissed the petition. The plaintiffs filed a timely motion to enlarge or amend the district court ruling. The district court denied the motion to enlarge or amend its order dismissing the case.

The plaintiffs filed a notice of appeal and a request for an expedited appeal, which we granted. On its own motion after the parties had submitted their briefs on the merits, we requested the parties to file statements addressing the possible mootness of this appeal, and assuming the case was moot, whether we should decide the appeal pursuant to the public-importance exception to the mootness doctrine or summarily dismiss it.

## II. Issues.

This case presents the following issues: (1) whether this appeal should be dismissed for a lack of jurisdiction because the plaintiffs' rule 1.904(2) motion did not toll the time to take the appeal, (2) whether this appeal is moot because the general assembly did not appropriate funds for the operation of these institutions for fiscal year 2017, and (3) whether the Governor's item veto of the appropriations for the Mount Pleasant and Clarinda Mental Health Institutes exceeded the scope of his constitutional authority.

## III. Timeliness of Appeal.

The timeliness of the filing of a notice of appeal is a jurisdictional question. *State v. Olsen*, 794 N.W.2d 285, 289 (Iowa 2011). The filing of an improper or untimely posttrial motion does not toll the deadline for filing a notice of appeal. *Id.* Under Iowa Rule of Appellate Procedure 6.101(1), a party must ordinarily file a notice of appeal within thirty days of the filing of the final order or judgment. Iowa R. App. P. 6.101(1)(*b*); *Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 640 (Iowa 2013). However, a timely and proper motion to enlarge or amend

the findings of fact or conclusions of law tolls the time to file an appeal until such time the district court enters a ruling on the motion. Iowa R. App. P. 6.101(1)(*b*); *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005). After the court rules on the motion, the party has to file its notice of appeal within thirty days of the ruling. *Okland*, 699 N.W.2d at 264. In other words, following the filing of a timely and proper posttrial motion under Iowa Rule of Appellate Procedure 6.101(1), a notice of appeal is timely if a party files the notice within thirty days of the district court ruling on the motion. *Sierra Club*, 832 N.W.2d at 640. If the party has not filed a timely and proper motion, we lack jurisdiction to decide the merits of an appeal. *Id.*

The district court entered a final judgment dismissing the petition on November 3. The plaintiffs did not file a notice of appeal within thirty days of the final judgment. However, on November 10, the plaintiffs filed a motion to enlarge or amend the district court judgment under Iowa Rule of Civil Procedure 1.904(2). The district court denied the motion on December 7, and the plaintiffs filed a notice of appeal on December 9.

To determine whether the filing of the rule 1.904(2) motion tolled the deadline to file their notice of appeal, we must determine (1) whether the plaintiffs timely filed the motion, and (2) whether the motion was proper. *Id.*

To be timely, a party must file a rule 1.904(2) motion by the deadline for filing a motion for new trial. Iowa R. Civ. P. 1.904(2). Thus, a party must ordinarily file it within fifteen days after the district court enters the judgment or decree. *See id.* r. 1.1007 (stating a party must file a motion for new trial within fifteen days of the filing of the district court decision unless the court grants additional time for good cause shown). Here, the plaintiffs filed the motion to enlarge or amend the

district court ruling seven days after its entry. We thus conclude the motion was timely.

Accordingly, the question of whether we have jurisdiction to decide the merits of this appeal turns on whether the plaintiffs filed the motion to enlarge or amend the district court ruling for a proper purpose. In this case, answering that question requires us to examine the motion, the portions of the petition referenced therein, and the summary judgment ruling dismissing the petition in light of our caselaw addressing the propriety of rule 1.904(2) motions.

By its terms, Iowa Rule of Civil Procedure 1.904 creates a procedure by which a district court may enlarge or amend a prior ruling made in a case not tried before a jury. *Sierra Club,* 832 N.W.2d at 641; *Meier v. Senecaut,* 641 N.W.2d 532, 538 (Iowa 2002). In relevant part, the rule provides,

> **1.904(1)** The court trying an issue of fact without a jury, whether by equitable or ordinary proceedings, shall find the facts in writing, separately stating its conclusions of law, and direct an appropriate judgment. . . .

> **1.904(2)** On motion joined with or filed within the time allowed for a motion for new trial, the findings and conclusions may be enlarged or amended and the judgment or decree modified accordingly or a different judgment or decree substituted.

Iowa R. Civ. P. 1.904. Because the filing of an improper motion to enlarge or amend a district court ruling does not toll the time for filing a notice of appeal, "the rule can create a trap for an unwary litigant who desires to appeal." *Okland*, 699 N.W.2d at 265 n.2.

The propriety of a rule 1.904(2) motion depends on the nature of the request it makes of the district court. Rule 1.904(2) generally gives each party an opportunity to request a change or modification to each adverse judgment entered against it by the district court before deciding

whether to incur the time and expense of an appeal. *Okland*, 699 N.W.2d at 267. A proper rule 1.904(2) motion does not merely seek reconsideration of an adverse district court judgment. *Sierra Club*, 832 N.W.2d at 641. Nor does it merely seek to rehash legal issues adversely decided. *Id.* A rule 1.904(2) motion is ordinarily improper if it seeks to enlarge or amend a district court ruling on a question of law involving no underlying issues of fact. *Id.*; *Meier*, 641 N.W.2d at 538. Likewise, a rule 1.904(2) motion that asks the district court to amend or enlarge its prior ruling based solely on new evidence is generally improper. *See McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 525 (Iowa 2015). Ordinarily, a proper rule 1.904(2) motion asks the district court to amend or enlarge either a ruling on a factual issue or a ruling on a legal issue raised in the context of an underlying factual issue based on the evidence in the record. *See McKee*, 864 N.W.2d at 525; *Sierra Club*, 832 N.W.2d at 641; *Meier*, 641 N.W.2d at 538.

Nonetheless, when a party has presented an issue, claim, or legal theory and the district court has failed to rule on it, a rule 1.904(2) motion is proper means by which to preserve error and request a ruling from the district court. *Meier*, 641 N.W.2d at 539; *Explore Info. Servs. v. Iowa Ct. Info. Sys.*, 636 N.W.2d 50, 57 (Iowa 2001). When a rule 1.904(2) motion requests a ruling on an issue properly presented to but not decided by the district court, the motion is proper even if the issue is a purely legal one. *Sierra Club*, 832 N.W.2d at 641.

In the plaintiffs' rule 1.904(2) motion, they alleged the district court order dismissing the petition "failed to address the issues and arguments presented on the request for injunctive relief as well as the issues and argument presented on the request for a writ of mandamus." The plaintiffs also alleged it was critical to the proper disposition of the

case for the court to determine whether either of the vetoes "had an illegal or unconstitutional *effect*" as they "essentially . . . resulted in the state violating its own statutory obligations."

To assist us in determining whether the plaintiffs identified factual or legal issues that were the proper subject of a motion to enlarge or amend the district court ruling on their rule 1.904(2) motion, we must examine the petition. In their request for injunctive relief, the plaintiffs alleged (1) the plaintiffs would be greatly and irreparably harmed unless an injunction was issued, (2) they were likely to succeed on the merits of their claim the Governor violated his duty to faithfully execute the laws of the state under article IV, section 9 of the Iowa Constitution, (3) a balancing of the equities favored the issuance of an injunction, and (4) no other remedy available at law was adequate.

In their request for mandamus, the plaintiffs alleged (1) the Governor had a legal obligation and duty to faithfully execute the laws of the state; (2) the Governor violated this duty; and (3) no other plain, speedy, and adequate remedy was available in the ordinary course of law. Finally, as the basis for these requests for specific relief, the plaintiffs alleged the Iowa Code mandates the existence and continued operation of both the Mount Pleasant and Clarinda Mental Health Institutes and the Governor exceeded the scope of his constitutional authority and violated provisions of the Iowa Code by vetoing the legislative appropriations intended therefore.

In granting the Governor's summary judgment, the district court held the existing statutes in the Code constitute neither a condition on future legislative appropriations to which the item veto power does not extend nor an independent limit on its exercise external to the constitution. Though the court concluded the vetoes fell squarely within

the scope of the item veto authority afforded the Governor by article III, section 16 of the Iowa Constitution, it did not make any specific conclusions with respect to the question of whether the Governor failed to faithfully execute the laws as required by article IV, section 9 of the Iowa Constitution by vetoing the legislative appropriations for the mental health institutes. Rather, after stating its conclusion that the vetoes did not violate article III, section 16, the court simply stated they violated no other constitutional provision.

Additionally, the court did not assess whether the statutory provisions relied upon by the plaintiffs mandated the continued operation of the Mount Pleasant and Clarinda Mental Health Institutes. Instead, because the court concluded the content of the statutory provisions made no difference in the outcome, it simply assumed they mandated the continued operation of the mental health institutes without actually interpreting them.

Notably, the district court recognized that further analysis would be required if the petition alleged a claim involving an exercise of the pocket veto that pitted the authority granted the Governor by article III, section 16 against some constitutional limit on his power to exercise it. The order dismissing the petition acknowledged that the case would have presented a closer question if the vetoes had "placed two constitutional provisions at loggerheads." Yet the petition alleged such a claim, and the order dismissing the petition failed to address it. Though the order stated the vetoes fell squarely within the Governor's item veto authority under article III, section 16 and did not violate any other constitutional provision, the court reached the latter conclusion without engaging in any analysis that might explain the basis for its decision.

From the order dismissing the petition, it was unclear whether the court actually considered whether the Governor had violated article IV, section 9 by failing to faithfully execute provisions of the Iowa Code mandating the continued funding and operation of the mental health institutes as the plaintiffs claimed. In fact, the court never even cited article IV, section 9 in its order dismissing the petition, nor did it provide any analysis as to how it reached its conclusion that the vetoes did not violate any constitutional provision.

Given the content of the order dismissing the petition, it is evident the rule 1.904(2) motion sought consideration of related, solely legal issues presented to but not decided by the district court. Namely, the motion sought a ruling on the question of whether the Governor violated article IV, section 9 by vetoing the legislative appropriations intended to fund the Mount Pleasant and Clarinda Mental Health Institutes and the related question of whether the Iowa Code mandated their continued funding and operation. The district court discussed neither question in the order dismissing the petition.

Because we conclude the rule 1.904(2) motion sought legal conclusions on issues presented to but not ruled upon by the district court, we conclude the plaintiffs filed the motion for a proper purpose and the filing of the motion tolled the deadline for filing the notice of appeal. Consequently, we retain jurisdiction to decide the merits of this appeal.

## IV. Mootness.

After the parties submitted their briefs, we asked them to file statements addressing the possible mootness of this appeal and, assuming it is moot, whether the court should decide it pursuant to the public-importance exception to the mootness doctrine or summarily

dismiss it. In particular, we directed the parties to address this issue in light of *Homan v. Branstad*, 864 N.W.2d 321 (Iowa 2015), a prior unrelated case in which the Governor and the same lead plaintiff as the present appeal were parties.

*Homan* involved the question of whether the Governor and the director of human services could impound funds for the continued operation of a juvenile home allocated in an appropriations bill the Governor had signed into law. *Id.* at 323–25, 327. Before considering the merits of the interlocutory appeal from a district court ruling granting a temporary injunction to the plaintiffs, we considered the threshold question of whether the appeal was moot because the general assembly had not appropriated funds for the continued operation of the juvenile home in the subsequent legislative session. *Id.* at 327–28.

We determined the appeal was moot because we lacked authority to order state officials to continue operating the home because the general assembly had decided not to appropriate funds for its continued operation the following year. *Id.* at 330. Though we acknowledged the appeal raised an issue of public importance concerning the scope of the Governor's impoundment authority, we declined to decide it pursuant to the public-importance exception to the mootness doctrine. *Id.* at 331–32.

The Governor asserts this appeal is moot because the general assembly did not appropriate funds for the Mount Pleasant and Clarinda Mental Health Institutes during the 2016 legislative session. The plaintiffs assert the appeal is not moot because the Iowa Code still mandates the continued existence and operation of the mental health institutes. They further argue these Code provisions, together with the constitutional provision contained in article IV, section 9 of the Iowa Constitution requiring the Governor "shall take care that the laws are

faithfully executed," require us to resolve the issue. We agree that the general assembly's failure to appropriate funds for the Mount Pleasant and Clarinda Mental Health Institutes during the 2016 legislative session does not make this case moot because the constitutional provisions and the statutes are still in force. Consequently, we must determine if the constitutional provisions and the statutes limit the Governor's item veto power.

**V. Whether the Governor's Item Veto of the Appropriations for the Mount Pleasant and Clarinda Mental Health Institutes Exceeded the Scope of His Constitutional Authority.**

**A. Standard of Review.** We review a district court ruling on a motion for summary judgment for correction of errors at law. *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008). Summary judgment is appropriate only when the moving party has demonstrated there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* In determining whether a grant of summary judgment was appropriate, we examine the record in the light most favorable to the nonmoving party, drawing all legitimate inferences that may be drawn from the evidence in his or her favor. *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011).

Our review is limited to the questions of whether a genuine dispute concerning a material fact exists and, if not, whether the district court correctly applied the law. *Id.* at 73; *Pillsbury Co.*, 752 N.W.2d at 434. A fact is material when its determination might affect the outcome of a suit. *Walker v. State*, 801 N.W.2d 548, 554 (2011). A genuine issue concerning a fact exists when reasonable minds can differ as to how a factual question should be resolved. *Id.* We may generally resolve a matter on summary judgment when the record reveals only the legal

consequences of undisputed facts are in issue. *City of Fairfield v. Harper Drilling Co.*, 692 N.W.2d 681, 683 (Iowa 2005).

In the context of a challenge to a summary judgment ruling concerning the propriety of an exercise of the item veto authority, a genuine issue of material fact sufficient to preclude a grant of summary judgment must concern an adjudicative fact related to the enactment of a bill by the general assembly in a particular form or the exercise of the item veto power with respect to a particular portion of the bill. *See Welsh v. Branstad*, 470 N.W.2d 644, 648 (Iowa 1991). All other matters bearing on whether a vetoed provision within a particular bill constituted an item within an appropriation bill subject to the item veto power are legislative facts. *Id.* A dispute concerning legislative facts that essentially amounts to competing assertions of an evaluative nature on the issue of whether a particular provision within a particular bill is subject to the item veto power does not itself constitute a basis for the denial of summary judgment. *See id.*

When resolving an appeal from a district court ruling on a summary judgment motion requires us to resolve a legal question involving statutory interpretation, we review the district court ruling on the statutory interpretation question for correction of errors at law. *See City of Postville v. Upper Explorerland Reg'l Planning Comm'n*, 834 N.W.2d 1, 6 (Iowa 2013); *C & J Vantage Leasing Co.*, 795 N.W.2d at 73. "In construing the Iowa Constitution, we generally apply the same rules of construction that we apply to statutes." *Rants v. Vilsack*, 684 N.W.2d 193, 199 (Iowa 2004).

**B. The Item Veto.** The source of the Governor's item veto power is article III, section 16 of the Iowa Constitution, which provides,

> The governor may approve appropriation bills in whole or in part, and may disapprove any item of an appropriation bill; and the part approved shall become a law. Any item of an appropriation bill disapproved by the governor shall be returned, with his objections, to the house in which it originated, or shall be deposited by him in the office of the secretary of state in the case of an appropriation bill submitted to the governor for his approval during the last three days of a session of the general assembly, and the procedure in each case shall be the same as provided for other bills. Any such item of an appropriation bill may be enacted into law notwithstanding the governor's objections, in the same manner as provided for other bills.

Iowa Const. art. III, § 16. The citizens of Iowa granted the Governor the item veto power by ratifying an amendment to the Iowa Constitution in 1968. *Rants*, 684 N.W.2d at 203.

Our caselaw identifies two core limitations on the item veto power derived from the language of article III, section 16. *See id.* at 206. First, any bill on which the item veto power is exercised must be either a traditional appropriation bill that contains at least one monetary allocation on its face or a specialized appropriation bill that allocates funds by directly ordering an expenditure or commanding alterations to standing allocations directed by the Code. *Id.* Second, the Governor may exercise his item veto on an item within an appropriation bill. *Id.* Items subject to the item veto power include (1) specific appropriations appearing on the face of appropriation bills, (2) conditioned appropriations in their entirety, including the appropriation themselves and all accompanying conditions limiting or directing the use to which they may be put, and (3) riders within appropriation bills that substantively legislate but do not limit the uses to which an appropriation may be put. *Id.* at 205–06; *Colton v. Branstad*, 372 N.W.2d 184, 191 (Iowa 1985). Whether a particular bill constitutes an appropriation bill and whether a particular provision within an

appropriation bill constitutes an item subject to the item veto power are questions of law. *See Rants*, 684 N.W.2d at 206–07.

In the district court, the parties filed a joint statement of undisputed facts and a joint appendix addressing every material adjudicative fact relevant to the question of whether the provisions intended to appropriate funds for the Mount Pleasant and Clarinda Mental Health Institutes in House File 666 and Senate File 505 constituted items within appropriation bills. In granting summary judgment to the Governor, the district court determined that he exercised his vetoes on items within appropriation bills. Neither party disputes this determination on appeal.

Accordingly, we agree with the district court that the vetoed provisions at issue in this appeal unquestionably constituted items within appropriation bills. The provisions at issue in this case plainly met the two primary prerequisites for a constitutional exercise of the item veto power granted in article III, section 16. We therefore affirm the district court ruling in this respect.

**C. Claimed Limitations on the Governor's Item Veto Power.** Having affirmed the district court ruling that the item vetoes met the prerequisites on exercises of the item veto power originating within article III, section 16, we now turn to the question of whether the Governor violated article IV, section 9 by exercising his item veto power to eliminate all legislative appropriations intended to fund the Mount Pleasant and Clarinda Mental Health Institutes.

Article IV, section 9 of the Iowa Constitution provides the Governor "shall take care that the laws are faithfully executed." Iowa Const. art. IV, § 9. The plaintiffs claim Iowa Code sections 226.1 and 218.1 mandate the continued funding and operation of these mental health

institutes. Therefore, they claim the Governor violated article IV, section 9 when he exercised his item veto power to entirely eliminate their funding.

Although there could be a limiting power on the Governor's veto authority, to resolve this appeal we need not decide whether a limiting power on the Governor's veto authority exists and, if it does, the contours of the limitation. We reach this conclusion because we disagree with the plaintiffs' premise that Iowa Code sections 226.1 and 218.1 mandate the continued funding and operation of the Mount Pleasant and Clarinda Mental Health Institutes.

> When interpreting statutory provisions, we have previously stated,
>
> The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge, or otherwise change the meaning of a statute.

*State v. Dohlman*, 725 N.W.2d 428, 431 (Iowa 2006) (quoting *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted)).

Further, we have said, "legislative intent is derived not only from the language used but also from 'the statute's "subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations." ' " *Id.* (quoting *Cox v. State*, 686 N.W.2d 209, 213 (Iowa 2004)). We also give weight to explanations attached to bills as indications of legislative intent. *City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 677 (Iowa 2005).

We will not consider what the legislature "should or might have said" when it constructed a statute. Iowa R. App. P. 6.904(3)(*m*); *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995). In determining legislative intent, we may also look to the maxim "expressio unius est exclusio alterius," meaning expression of one thing is the exclusion of another. *Marcus*, 538 N.W.2d at 289. It is an established rule of statutory construction that "legislative intent is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned." *Id.*

Additionally, we aim to give meaning to the statutory changes the general assembly enacts. *Davis v. State*, 682 N.W.2d 58, 61 (Iowa 2004). "When an amendment to a statute adds or deletes words, a change in the law is presumed unless the remaining language amounts to the same thing." *Id.* When considering statutory amendments, we must assume that the general assembly "sought to accomplish some purpose" and the amendment "was not a futile exercise." *Id.*

We now turn to the statutory provisions upon which the plaintiffs base their claim to determine whether the general assembly intended to require the continued funding of the Mount Pleasant and Clarinda Mental Health Institutes.

Section 226.1 of the Iowa Code provides, in relevant part,

> 1. The state hospitals for persons with mental illness shall be designated as follows:
>
> *a.* Mental Health Institute, Mount Pleasant, Iowa.
>
> . . . .
>
> *c.* Mental Health Institute, Clarinda, Iowa.
>
> . . . .

2. *a.* The purpose of the mental health institutes is to operate as regional resource centers providing one or more of the following:

(1) Treatment, training, care, habilitation, and support of persons with mental illness or a substance abuse problem.

(2) Facilities, services, and other support to the communities located in the region being served by a mental health institute so as to maximize the usefulness of the mental health institutes while minimizing overall costs.

(3) A unit for the civil commitment of sexually violent predators committed to the custody of the director of human services pursuant to chapter 229A.

*b.* In addition, the mental health institutes are encouraged to act as a training resource for community-based program staff, medical students, and other participants in professional education programs.

Iowa Code § 226.1(1)–(2). The plaintiffs argue section 226.1 mandates the continued existence of the Mount Pleasant and Clarinda Mental Health Institutes. To determine whether the plaintiffs are correct requires us to ascertain the general assembly's intent.

To do so, we next turn to the legislative history of section 226.1. The legislative assembly of the Territory of Iowa enacted the first statute concerning "insane persons" in its first session in 1838.[2] If a jury found a person to be "insane," the court appointed three people as guardians to take care of the person. The Statute Laws of the Territory of Iowa, Insane Persons § 2, at 292 (1839). The Code in 1851 provided the court shall appoint a guardian if a person is found to be "insane," and the guardian may confine him or commit him to jail on an order of the county judge who may also release him. Iowa Code ch. 50, §§ 860, 862 (1851).

---

[2]All references to persons with mental illness are intended to be quotes and reflect the words the general assembly used in various statutes it enacted.

In 1854, the fifth general assembly passed an act to establish Iowa's first state "asylum for the Insane . . . at or near Mount Pleasant, in Henry county." 1854 Iowa Acts ch. 134, § 1. In 1858, the seventh general assembly passed an act described by its summary as "[an act] for the government of the Iowa Insane Hospital, and the care of the Insane and Idiots." 1858 Iowa Acts ch. 141. Section 1 of the act provided "[t]hat the Insane Hospital located at Mount Pleasant, shall be known by the title of the Iowa Insane Hospital, and shall be placed under the charge of a board of seven Trustees." *Id.* at § 1. Section 64 repealed "Chapter 50 of the Code and all Acts and parts of Acts in regard to the care of the insane and idiots, which are inconsistent with the provisions of this Act." *Id.* at § 64.

The Revision of 1860 again renamed the hospital and detailed the governance of the hospital. Revision of 1860 ch. 59, § 1471. Specifically, section 1471 provided "[t]hat the hospital for the insane, located in Mount Pleasant . . . shall be known under the name and by the title of the Iowa hospital for the insane, and shall be placed under the charge of seven trustees." *Id.* at § 1471.

In 1868, the twelfth general assembly passed an appropriation bill to "[p]ermanently [l]ocate, and to [p]rovide for the [e]rection of an [a]dditional [i]nstitution for the [i]nsane." 1868 Iowa Acts ch. 97. Section 1 provided that "there shall be and is hereby permanently established at Independence . . . an [a]dditional [i]nstitution for the [s]upport and [c]are of the [i]nsane." *Id.* at § 1. However, in 1870, the thirteenth general assembly passed a statute described as "[an act] for the [g]overnment of the [h]ospitals for the [i]nsane, [d]efining the [l]egal [r]elations of [i]nsane [p]ersons, and [p]roviding for their [c]are and [p]rotection." 1870 Iowa Acts ch. 109. Section 1 provided,

> That the Hospital for the Insane, located at Mount Pleasant, in Henry county, shall hereafter be known by the name of the Iowa Hospital for the Insane at Mount Pleasant; and the Hospital for the Insane located at Independence, in Buchanan county, shall be known by the name of the Iowa Hospital for the Insane at Independence. Each of said Hospitals shall be under the charge of seven Trustees. . . .

*Id.* at § 1 (codified at Iowa Code § 1383 (1873)). Section 58 of the act repealed "[a]ll acts or parts of acts inconsistent with the provisions of this act." *Id.* at § 58. The permanency language from the 1868 appropriation bill that created the hospital in Independence was not included in the 1870 act, and that language was therefore, presumably abandoned.

In 1884, the twentieth general assembly passed an act providing for an additional hospital for the "insane." 1884 Iowa Acts ch. 201, § 1. Section 1 stated "[t]hat there shall be erected and permanently established at the place to be selected as hereinafter provided, an additional hospital for the support, care, and treatment of the insane of the state." *Id.* Section 3 delineated that the hospital "shall be in the southwestern portion of the state." *Id.* at § 3. The 1884 Supplement to McClain's Annotated Statutes of the State of Iowa contained all the amendments to the Code, acts passed by the nineteenth and twentieth general assemblies, and notes of decisions made by the supreme court. However, in subsequent legislation the general assembly did not include the permanency language. *See* 1888 Iowa Acts ch. 75, §§ 1–2 (codified at McClain's Ann. Code §§ 2182–2183 (1888)).

In 1888, the twenty-second general assembly passed an act establishing an additional "hospital for the insane" at Clarinda as well as organizing the board of trustees for the hospital. *Id.* Section 1 of the act provided "the hospital for the insane, located at Clarinda . . . shall be known by the name of the Iowa Hospital for the Insane at Clarinda." *Id.*

Section 2182 of the Code of 1888 naming the Clarinda hospital, mirrors section 2170 of the Code providing for the naming and trustees for the hospitals at Mount Pleasant and Independence. *Compare* McClain's Ann. Code § 2182 (1888), *with id.* § 2170 (1888)).

In 1894, the twenty-fifth general assembly passed an act declaring "there shall be erected and permanently established at the place to be selected as herein provided an additional hospital for the support, care, and treatment of the insane of the State." 1894 Iowa Acts ch. 80, § 1. The statute further provided for the manner in which the location should be selected and the appointment of commissioners as well as their duties. *Id.* §§ 2–13. This provision was never codified because the next Code was not published until 1897.

Before the 1897 Code was codified, the twenty-fifth general assembly also passed an act creating a five-person commission to revise and codify the laws of Iowa and report necessary and desirable changes to the twenty-sixth general assembly. *Id.* ch. 115, § 1. Specifically, section 4 of the act provided,

> Said commission shall carefully revise and codify the laws of Iowa, and shall rewrite the same and divide them into appropriate parts and arrange them under appropriate titles, chapters, and sections; omit all parts repealed or obsolete, insert all amendments and make the laws complete. Said commission shall have the power to transpose words and sentences, arrange the same into sections or paragraphs and number them, change the phraseology and make any and all alterations necessary to improve, systematize, harmonize and make the laws clear and intelligible. They shall omit from said revision all laws of a local or temporary character . . . .

*Id.* § 4.

In 1896, the Code Commission presented the twenty-sixth general assembly with a proposed Code and an explanatory report. The

explanatory report explained the commission's proposed revisions to title XII, chapter 2, relating to "the care of the insane." Rep. of the Code Comm'n, 26th G.A., at 65 (Iowa 1896). The report listed the involved Code sections[3] and stated that a uniform system of provisions was created for all the hospitals. *Id.*; Proposed Revision of the Code of Iowa, 26th G.A., at 443 (1896). The report also included that "[p]rovisions as to election of trustees, their qualifications, compensation, etc., are covered by a general chapter applicable to all state institutions." Rep. of the Code Comm'n, at 65; Proposed Revision of the Code of Iowa, at 529.

In 1897, the state published the Code, and the general assembly approved and incorporated the proposed provisions for the "insane" hospitals into the Code of 1897 with the exact language proposed by the Code Commission. *Compare* Iowa Code Ann. § 2253 (1897), *with* Proposed Revision of the Code of Iowa, at 443. Section 2253 of the 1897 Code provided,

> Hospitals—trustees. The hospital for the insane at Mount Pleasant shall be known by the name of "The Hospital for the Insane at Mount Pleasant"; the one at Independence, "The Hospital for the Insane at Independence"; the one at Clarinda, "The Hospital for the Insane at Clarinda"; and the one at Cherokee, "The Hospital for the Insane at Cherokee"; each of which shall be under the management of five trustees, two of whom may be women, one of whom shall be a resident of the place in which the hospital is located.

Iowa Code Ann. § 2253 (1897).

The phrase at issue in the case today, "shall be designated," first appeared in the Code of 1954. Iowa Code § 226.1 (1954). Section 226.1 was entitled "[o]fficial designation," and stated that "[t]he hospitals for

---

[3]Iowa Code §§ 1383–1445, 3825, 3826; 15 G.A., chs. 26, 53; 16 G.A., ch. 28; 17 G.A., chs. 84, 100, 183; 18 G.A., ch. 152; 20 G.A., ch. 66; 21 G.A., ch. 47; 22 G.A., chs. 68, 75, 76; 24 G.A., chs. 24, 48; 25 G.A., ch. 80. McClain's Ann. Code §§ 2170–2248, 5102, 5103 (1888).

the insane shall be designated as follows: 1. Mental Health Institute, Mount Pleasant, Iowa. . . . 3. Mental Health Institute, Clarinda, Iowa." *Id.* Prior to the codification of section 226.1, the fifty-fourth general assembly passed an act "to change the official designation of the four state hospitals for insane to mental health institutes at the cities and towns wherein located." 1951 Iowa Acts ch. 83 (codified at Iowa Code § 226.1 (1954)).

The explanation in the bill in which the 1951 act was derived from included the following: "This bill is suggested by the Board of Control. It is felt that the change in the official names of the state insane hospitals would be helpful to the mental welfare of the patients therein." H.F. 592, 54th G.A., explanation (Iowa 1951).

The legislative history of section 226.1 indicates the general assembly intended the use of the phrase "shall be designated" to ascribe specific names to the state mental health institutions, not to mandate their existence in perpetuity. This conclusion harmonizes with the common meaning of the word "designate." Black's Law Dictionary defines "designate" as "[t]o represent or refer to (something) using a particular symbol, sign, name, etc." *Designate, Black's Law Dictionary* (10th ed. 2014).

Further, based on the principles of statutory construction, we must conclude that the general assembly's omission of the phrase "permanently established" in the Code after 1894 altered its meaning. We cannot read into the statute what we think it ought to say. *Marcus*, 538 N.W.2d at 289. What the general assembly actually said guides our interpretation. *Id.* Thus, we cannot read into section 226.1 a mandatory existence of the mental health institutes referred to in section 226.1(1).

We now turn our attention to the second statute on which the plaintiffs rely. Section 218.1 provides,

> The director of human services shall have the general and full authority given under statute to control, manage, direct, and operate the following institutions under the director's jurisdiction, and may at the director's discretion assign the powers and authorities given the director by statute to any one of the deputy directors, division administrators, or officers or employees of the divisions of the department of human services:
>
> . . . .
>
> 4. Mental health institute, Clarinda, Iowa.
>
> . . . .
>
> 6. Mental health institute, Mount Pleasant, Iowa.

Iowa Code § 218.1.

The plaintiffs contend section 218.1 supports their claim that the general assembly mandated the continued existence of the Mount Pleasant and Clarinda Mental Health Institutes. However, like the legislative history of 226.1, the history of section 218.1 does not lend itself to the plaintiffs' interpretation.

As previously discussed, the Code Commission of 1896 proposed moving the provisions relating to the trustees of the state hospitals to a separate chapter in the Code relating to the governance of all state institutions. Rep. of the Code Comm'n, at 65 (1896); Proposed Revision of the Code of Iowa, at 529. The twenty-sixth general assembly adopted the commission's proposal, and section 2609(3) of the 1897 Code provided,

> The general assembly shall elect the following regents and trustees of the state institutions . . . .
>
> . . . .

> 3. For the college for the blind, each of the hospitals for the insane, and the industrial school, five trustees each, who shall hold office for six years . . . .

Iowa Code § 2609(3) (1897).

A year later, the twenty-seventh general assembly passed a bill to create a state board of control to "manage, control, and govern . . . the state hospitals for the insane." 1898 Iowa Acts ch. 118, § 8 (codified at Iowa Code § 2727-a8 (Supp. 1902)). Since then, the general assembly amended the chapter several times to add and remove specific institutions from under the governance of the board of control. *See, e.g.*, 1911 Iowa Acts ch. 141, § 1 (codified at Iowa Code § 2682-c (Supp. 1913)) (transferring the control and management of the college for the blind at Vinton to the state board of education); 1917 Iowa Acts ch. 160, § 1 (codified at Iowa Code § 2318 (1919)) (transferring control of the state school for the deaf to the state board of education); 1947 Iowa Acts ch. 110, § 1 (codified at Iowa Code § 262.7 (1950)) (transferring the supervision of the state sanatorium to the board of education); 1983 Iowa Acts ch. 96, §§ 3, 66 (codified at Iowa Code § 217A.2 (1985)) (transferring control of state correctional institutions to the department of corrections). The general assembly has also amended the statute to change the names of the institutions under its authority. *See, e.g.*, 1951 Iowa Acts ch. 82, § 1 (codified at Iowa Code § 218.1 (1954)) (changing the name of the "soldiers' orphans home to The Iowa Annie Wittenmyer Home"); 1951 Iowa Acts ch. 83, §§ 1–4 (codified at Iowa Code § 218.1 (1954)) ("[an act] to change the official designation of the four state hospitals for insane to mental health institutes at the cities and towns wherein located"); 1983 Iowa Acts ch. 101, § 37 (codified at Iowa Code § 218.1 (1985)) (amending "Soldiers Home" to "Iowa veterans home" and "Eldora training school" to "State training school"). Finally, the general

assembly has amended the statute to change the governing authority to what is currently the director of human services. *See, e.g.,* 1967 Iowa Acts ch. 209, § 40 (codified at Iowa Code § 218.1 (1971)) (granting the commissioner of the state department of social services authority to control, manage, direct and operate institutions under his jurisdiction).

Until 1897, each of the mental health institutes were placed "under the charge" of a board of trustees. *Compare* McClain's Ann. Code §§ 2170, 2182–83 (1888), *with* Iowa Code Ann. § 2609(3) (1897). These provisions were contained in the same statutes from which section 226.1 came to be. *See* Iowa Code §§ 2182, 2170 (1888). In 1897, the general assembly amended the Code to create a general chapter applicable to the governance of all state institutions, and it is the provision from which the modern section 218.1 exists. *See* Iowa Code § 2609(3) (1897). There is nothing in the legislative history of section 218.1 that leads us to construe the general assembly's intent is to mandate the continued existence of the state mental health institutes. The legislative history of section 218.1 reveals that the general assembly established the statute to name the governing structure for state institutes and to name the institutions in which that governing structure has the authority to operate.

Another fact of significance is that Iowa Code section 218.1(8) currently lists the "Iowa juvenile home." Iowa Code § 218.1(8). However, in 2014, the general assembly ended appropriations for the operation of the juvenile home, and it subsequently closed. *Homan,* 864 N.W.2d at 327–28.

This fact cuts directly against the plaintiffs' claim that section 218.1 mandates the continued operation of the institutions listed and that the general assembly can only close the institutions by amending

section 218.1. Clearly, the general assembly does not believe section 218.1 mandates the operation of the facilities listed or that it must amend the statute in order for a facility listed to cease operation, because even though section 218.1 continues to list the juvenile home, it no longer exists.

Notably, in regards to other similar state institutions, the school for the deaf and the Iowa braille and sight saving school, the general assembly has adopted specific provisions for the merger and closure of those institutes. Iowa Code § 270.10 (1987). The Code outlines three requirements for the merger or closure of either of those institutions:

> 1. The department of management has presented to the general assembly a comprehensive plan, program, and fiscal analysis of the existing circumstances and the circumstances which would prevail upon the proposed merger or closing, together with data which would support the contention that the merger or closing will be more efficient and effective than continuation of the existing facilities. . . .

> 2. The general assembly has studied the plans, programs, and fiscal analysis and has reviewed their impact on the programs.

> 3. The general assembly has enacted legislation authorizing either the closing or the merger to take effect not sooner than two years after the enactment of the legislation.

*Id.* § 270.10(1)–(3) (1987).

Sections 226.1 and 218.1 are silent as to any requirements or limitations on the merger or closure of the mental health institutes in Mount Pleasant and Clarinda. If the general assembly wanted to put conditions on a closure, it could have done so. The general assembly can express its intent by omission, and we cannot "enlarge or otherwise change the terms of a statute as the legislature adopted it." *Marcus*, 538 N.W.2d at 289. The general assembly's omission of any requirements or

limitations on the closure of the mental health institutes gives weight to our interpretation that the general assembly did not intend for the perpetual existence of the mental health institutes in Mount Pleasant and Clarinda nor intended to reserve the power to close them to itself.

Because we find sections 226.1 and 218.1 do not mandate the existence of the Mount Pleasant and Clarinda Mental Health Institutes, the plaintiffs' reliance on *AFSCME/Iowa Council 61 v. State*, 484 N.W.2d 390 (Iowa 1992), is misplaced. In *AFSME* we did not hold that the governor's veto was invalid. *Id.* at 395. There, we only found that arbitration decisions were binding obligations of the state, which had not been adjudicated at the time of the veto. *Id.* Here, there is no such obligation, contractual or statutory, for the state to maintain the existence of the mental health institutes.

The plaintiffs also rely on an opinion from the attorney general in 1973 to support their claim that the Governor does not have the authority to close the Mental Health Institutes in Mount Pleasant and Clarinda. *See* Op. Iowa Att'y Gen. No. 73–12–6 (Dec. 20, 1973), 1973 WL 324663, at *3. We find this opinion inconsequential to the issues we must address today. Whether the director of the department of human services has the authority to close a mental health institute is not at issue in this case. At issue today is whether sections 226.1 and 218.1 of the Iowa Code limit the governor's item veto power.

Ultimately, the statutory interpretation of sections 226.1 and 218.1 does not lend itself to mandate that the mental health institutes in Mount Pleasant and Clarinda exist in perpetuity. The legislative history of sections 226.1 and 218.1 suggests that the general assembly's intent is to name the mental health institutes and establish a governing structure to operate those institutions. Based on the well-established

principles of statutory interpretation, we cannot read into those sections of the Code more than what the general assembly has intended. Accordingly, we conclude these statutes do not limit the Governor's ability to item veto appropriated funds for these institutions.

## VI. Disposition.

We affirm the judgment of the district court finding the Governor's exercise of his item veto did not exceed the scope of his constitutional authority and the court order dismissing the petition.

**AFFIRMED.**