# IN THE COURT OF APPEALS OF IOWA

No. 20-0898
Filed October 7, 2020

**IN THE INTEREST OF N.M.,**
**Minor Child,**

**STATE OF IOWA,**
     Appellant.
_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

Following termination of parental rights, the State appeals from the juvenile court's order removing the Iowa Department of Human Services as the child's guardian and custodian and appointing the child's foster parents to serve as guardians and custodians. **REVERSED AND REMANDED**.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellant State.

Dustin D. Hite and Randy S. DeGeest of Heslinga, Dixon & Hite, Oskaloosa, for appellees-intervenors foster parents.

Denise McKelvie Gonyea of McKelvie Law Office, Grinnell, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

This case involves events transpiring immediately following the juvenile court's ruling terminating the parental rights of the parents of this child. It addresses the scope of the juvenile court's role in managing the duties of the child's guardian and custodian following termination.

The State filed a petition seeking to terminate the parental rights of the parents of the child. At the time of the termination hearing, the child had been living with the child's foster parents for over one year. The foster parents had intervened in the termination proceedings.[1] As a result, they were parties to the proceeding and attended the termination hearing with their attorney.[2] At the hearing, no party challenged appointment of the Iowa Department of Human Services (DHS) as the child's guardian and custodian and no party proposed an alternative person or entity to serve in those capacities.

Following the hearing, the juvenile court issued an order terminating the parental rights of the child's parents.[3] In that order, the juvenile court named the DHS as the child's guardian and custodian. The day after the filing of the termination order, the DHS notified the foster parents that the child would be placed with relatives in ten days. This notice sparked a flurry of activity, starting

---

[1] While the juvenile court granted the foster parents' request to intervene, for unknown reasons the juvenile court twice summarily denied similar requests by the child's biological relatives who were exercising regular visitation and interested in adopting the child.

[2] For ease and consistency of reference, we will refer to the intervenors hereafter as "the foster parents," rather than "the intervenors."

[3] In a separate ruling, we affirmed the juvenile court's judgment terminating parental rights. *In re N.M.*, No. 20-0882, 2020 WL 5651602 (Iowa Ct. App. Sep. 23, 2020).

with the foster parents filing two documents: (1) an application asking the juvenile court to direct the DHS to keep the child placed with the foster parents and (2) a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) asking the juvenile court to amend its termination order to name the foster parents as the child's guardians and custodians.

Following a hearing on the foster parents' filings, the juvenile court issued an order addressing both filings. In that order, the juvenile court denied the application to direct placement of the child, noting the court "does not have authority to make a direct placement of this child." Also in the order, the juvenile court granted the motion to amend by removing the DHS as guardian and custodian and appointing the foster parents to serve in those capacities.

In its order, the juvenile court criticized the DHS's plan to remove the child from the foster parents and place the child with relatives. The juvenile court decided the change in placement, without continued contact with the foster parents, would cause the child trauma and grief. The court presumed the DHS would follow its procedures and determine the best adoptive placement for the child, but the court speculated that, if such procedure resulted in choosing the foster parents as the adoptive parents, it could result in another possibly traumatic move for the child. Finding the DHS's plan was not in the child's best interest, the juvenile court substituted the foster parents for the DHS to serve as guardians and custodians for the child. The State appeals the juvenile court's order.

We start with the standard of review. Determining the standard of review is complicated by the procedural posture of this case. The juvenile court, consistent with the motion filed by the foster parents, purported to act pursuant to Iowa Rule

of Civil Procedure 1.904(2) by amending its termination order. However, it is clear that neither the foster parents' request nor the juvenile court's actions were properly made pursuant to that rule. It is generally improper to base a rule 1.904(2) motion on new evidence. *Homan v. Branstad*, 887 N.W.2d 153, 161 (Iowa 2016) ("[A] rule 1.904(2) motion that asks the district court to amend or enlarge its prior ruling based solely on new evidence is generally improper."). Here, the foster parents' motion was not only based entirely on new evidence not presented at the termination hearing, it was based entirely on events that occurred after both the termination hearing and the termination ruling. Therefore, rule 1.904(2) was not a proper procedural tool for the juvenile court's action.

Ordinarily, we would consider reversal on this procedural irregularity alone. However, we are mindful of the principle that we treat a motion by its content, not its caption. *See Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 879 n.1 (Iowa 2014); *Zimmer v. Vander Waal*, 780 N.W.2d 730, 732 (Iowa 2010). Based on the filings with the juvenile court by the foster parents, the State's resistance, the transcript of the hearing, and the juvenile court's ruling, it is clear that all parties and the juvenile court treated the foster parents' filings as a request to remove and replace a guardian pursuant to Iowa Code sections 232.118(1) and 232.117(3), rather than as a motion made pursuant to rule 1.904(2).[4] Since the parties treated

---

[4] In their response to the State's petition on appeal, the foster parents argue the juvenile court's ruling was not an order removing the DHS as guardian but an original order placing guardianship. We disagree. In its termination ruling, the juvenile court appointed the DHS, with no objection lodged and no alternative guardian proposed. It was the DHS's action after termination and the original appointment that prompted the requested removal of DHS. Additionally, during the hearing, the juvenile court made a point of noting the parents' attorneys appeared for the hearing but would not be allowed to question witnesses because

the proceeding as a guardian removal proceeding and the record is sufficient to allow us to address it as such, we will address it in that fashion as well.

Our review of proceedings seeking to remove the DHS as guardian following termination of parental rights is de novo. *In re E.G.*, 738 N.W.2d 653, 654 (Iowa Ct. App. 2007); *In re S.O.*, No. 13-0740, 2013 WL 3458216, at *1 (Iowa Ct. App. July 10, 2013). In doing so, we review the facts and law and adjudicate rights anew, but we give weight to the findings of fact of the juvenile court. *S.O.*, 2013 WL 3458216, at *1.

To review the juvenile court's decision to remove the DHS as the child's guardian, it is important to keep in mind the role the juvenile court plays in removing a guardian once one has been appointed. The parameters of that role have been established by our case law. To understand those parameters, it helps to articulate what role the juvenile court does *not* play. The juvenile court does not have the authority to: (1) treat the request for removal of a guardian as a custody battle between the competing possible guardians; (2) conduct a de novo review of the

---

the parents were no longer parties. If the hearing had truly been a hearing on a motion to amend the termination ruling, as the foster parents claim on appeal, the parents would have still been parties and permitted to present evidence and cross-examine witnesses. The fact they were not allowed to do so is further support for the conclusion that the hearing was a guardian removal hearing. Finally, during the course of the guardian removal hearing, the foster parents' attorney asked whether the court would consider the record made at the termination hearing. This would not have needed to be clarified if the hearing were being held on a motion to amend under rule 1.904(2). Under these circumstances, the proceeding at issue was a guardian removal request pursuant to Iowa Code section 232.118(1) and not a modification under rule 1.904(2). If the foster parents were correct that this was a hearing on a motion to amend under rule 1.904(2), the juvenile court's order must be reversed because the juvenile court received improper evidence of events that transpired after the termination ruling sought to be modified. *See Homan*, 887 N.W.2d at 161 (noting the impropriety of basing a rule 1.904(2) ruling on new evidence).

DHS's decision regarding placement and use its own disagreement with the DHS's decision as a basis to remove the DHS as guardian; or (3) exercise veto power over the DHS's placement decision by removing the DHS as guardian if the juvenile court disagrees with it. *See In re J.H.*, No. 20-0081, 2020 WL 2988758, at *9–10 (Iowa Ct. App. June 3, 2020) (Ahlers, J., specially concurring) (collecting cases supporting the stated principles). Instead, the standard to be applied is:

> An applicant seeking to have a court-appointed guardian of a child removed pursuant to Iowa Code section 232.118(1) has the burden of establishing the court-appointed guardian failed to act in the child's best interest by unreasonably or irresponsibly failing to discharge the guardian's duties in finding a suitable adoptive home for the child.

*Id.* at *10 (Ahlers, J., specially concurring) (collecting cases and distilling their holdings to arrive at the stated standard).

Here, the juvenile court acted within its statutory authority when it established the DHS as guardian and custodian of the child in the termination order without objection from any party. *See* Iowa Code § 232.117(3). In response to the foster parents' post-termination filings, the juvenile court began on the right track when it denied the foster parents' request to direct the DHS to place the child with the foster parents because the court "does not have authority to make a direct placement of this child." *See In re E.G.*, 745 N.W.2d 741, 744 (Iowa Ct. App. 2007) (reiterating juvenile courts have the authority to direct the type of placement the DHS can make but lack authority to direct a specific placement). Unfortunately, the juvenile court then veered off that track when it granted the motion seeking to remove the DHS as guardian. By such change of course, the juvenile court essentially did the very thing it had just acknowledged it did not have the authority to do. By removing the DHS as guardian and custodian and appointing the foster

parents in its place, the juvenile court effectively directed placement of the child. The juvenile court was no more authorized to direct placement in response to a motion seeking removal of the DHS than it was in response to a motion seeking such direct placement.

In order to make the change made by the juvenile court, the foster parents were obligated to present evidence establishing that the DHS "failed to act in the child's best interest by unreasonably or irresponsibly failing to discharge [the DHS's] duties in finding a suitable adoptive home for the child." *J.H.*, 2020 WL 2988758, at *10 (Ahlers, J., specially concurring). On our de novo review, we find the foster parents did not meet this burden. Reasonable minds could differ on whether it was better to change placement abruptly or do so gradually over time while the DHS engaged in its process of determining the ultimate adoptive home for the child. We acknowledge the juvenile court was well-intentioned when it came down on the side of a status quo or gradual transition approach. However, the juvenile court was not writing on a blank slate and was not free to substitute its judgment for that of the DHS. The decision made by the DHS was within its discretion as guardian and custodian of the child and had to be honored absent a showing that the decision demonstrated an unreasonable or irresponsible failure to discharge the duty to find a suitable adoptive home. *Id.* (Ahlers, J., specially concurring). The record does not make such a showing.

The relatives at issue had been caring for the child three overnights per week for a significant period of time leading up to the termination hearing, with the foster parents caring for the child the other four days each week. The relatives also expressed a desire to adopt the child almost immediately upon being made

aware of the child's situation, which was shortly after the child's removal from the child's parents. The relatives had undertaken all steps asked of the relatives to become a viable adoptive placement. There is no indication in the record that the relatives would not be an appropriate option as adoptive parents. Additionally, the foster parents had been informed all along that the child's placement with them was temporary and relatives would be sought to adopt the child if termination of parental rights occurred. Under these circumstances, the DHS's decision to increase the child's time in the relatives' home from nearly one-half of the week to all week, concomitantly eliminating time with the foster parents, while it engaged in its process of determining the proper adoptive home was within its discretion as guardian and custodian. The DHS should not have been removed for exercising that discretion in an acceptable manner, no matter how much the juvenile court disagreed with the DHS's action. Therefore, the juvenile court's order must be reversed.

We have considered the other arguments raised by the foster parents and find them unpersuasive or not relevant to the issue on appeal.

We reverse the juvenile court's order and remand for entry of an order removing the foster parents as guardians and custodians for the child and reappointing the DHS to serve as guardian and custodian.

**REVERSED AND REMANDED.**